**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **FORD MOTOR COMPANY AND AFFILIATES,** | ) | |
| **Plaintiffs,** | ) | **No. 02-483 T** |
| **v.** | ) | **The Honorable Francis M. Allegra** |
| **THE UNITED STATES,** | ) | |
| **Defendant.** | ) | |

# BRIEF FOR THE UNITED STATES IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT, AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**EILEEN J. O'CONNOR**
*Assistant Attorney General*

**DAVID GUSTAFSON**
**STEVEN FRAHM**
**ROBERT C. MARKHAM**
**W. C. RAPP**
*Attorneys*
*United States Department of Justice*
*Tax Division*
*Washington, D.C. 20044*

# TABLE OF CONTENTS

Page

Brief for the United States in support of its cross-motion for summary judgment, and in opposition to plaintiff's motion for summary judgment . . . . . . . . . . . . . . . . 1

Questions presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statutes and regulations involved . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Summary of argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Argument:

I. Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
   A. No interest on interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
   B. Restricted interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
   C. Illustration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

II. Errors in plaintiff's computation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

   A. Prior to TEFRA interest compounding, accrued overpayment interest may not be applied to reduce deficiency tax . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

   B. The final appeals interest computation - and plaintiff's interest computation - uses erroneous effective dates for carrybacks applied to reduce plaintiff's tax liability for 1976 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Appendix . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## TABLE OF AUTHORITIES

Page

**Cases:**

*Avon Products, Inc. v. United States*, 588 F.2d 342 (2d Cir. 1978) . . . . . . . . . . . . . . . 5,13

*FleetBoston Financial v. United States*, 68 Fed Cl. 177 (2005) . . . . . . . . . . . . . . . . 14,15

*Industrial Development Corp. v. United States*, 138 F.Supp. 63 (N.D. Ill. 1955) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Jones v. Liberty Glass Co.*, 332 U.S. 524 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Marsh & McLennan Companies, Inc. v. United States*, 302 F.3d 1369 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*May Department Stores Co. v. United States*, 36 Fed. Cl. 680 (1996) . . . . . . . . 13, 14, 15

*Sequa Corp. v. United States*, 1999-1 U.S.T.C. ¶ 50,379 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. St. Joe Minerals Corp.*, 2001-2 U.S.T.C ¶ 50,722 (E.D. Mo. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**Statutes:**

The Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), P.L. 97-248, 96 Stat. 324:

§ 344 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 19, 24, 28
§ 346 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 23, 24, 26, 27

Internal Revenue Code of 1954 (26 U.S.C.):

§ 27 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
§ 33 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
§ 38 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 23
§ 38 thru 45 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
§ 46 thru 48 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
§ 172 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Page

§ 904 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
§ 6601 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5, 6, 12, 17, 18, 19, 23
§ 6611 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5, 6, 8-10, 17-19
§ 6621 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 23, 25, 27
§ 6622 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6, 18, 28

Technical Amendments Act of 1958 (Pub. L. 88-866) . . . . . . . . . . . . . . . . . . . . . . . . . 17

**Miscellaneous:**

15 Mertens Law of Federal Income Taxation § 58A:43(2003) . . . . . . . . . . . . . . . . . . . . . . 7

H.R. Rept. No. 8381, 85th Cong., 2nd Sess. (1957), 1958-3 C.B. 811 . . . . . . . . . . . . . . . 18

Rev. Proc. 60-17, Sec. 3, 1960-2 C.B. 937 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-17

Rev. Rul. 71-534, 1971-2 C.B. 414 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **FORD MOTOR COMPANY AND AFFILIATES,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **No. 02-483 T** |
| **v.** | ) | **The Honorable Francis M. Allegra** |
| | ) | |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

**BRIEF FOR THE UNITED STATES,**
**IN SUPPORT OF ITS**
**CROSS-MOTION FOR SUMMARY JUDGMENT**
**AND IN OPPOSITION TO**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

---

This is a Tucker Act suit in which plaintiff seeks additional overpayment interest with respect to its federal corporate income taxes for calendar 1976.

QUESTIONS PRESENTED

1. Whether the computation upon which plaintiff's claim in this suit is based errs in netting against each other interest-bearing and non-interest bearing amounts for periods prior to January 1, 1983.

2. Whether the final interest computation performed by the Internal Revenue Service, and the computations upon which plaintiff relies in this suit, err with respect to the "availability dates" of various credits used to reduce plaintiff's 1976 income tax liability.

## STATUTES AND REGULATIONS INVOLVED

Sections 6601, 6611, 6621, and 6622, as amended from time to time with respect to the periods at issue in this case.

## STATEMENT

Plaintiff's 1976 year tax liability was adjusted numerous times based on general adjustments[1/] as well as carrybacks from 1977, 1979, 1980, and 1981. DPFF[2/] ¶ 5. The tax liability was finalized with the Appeals Office of the Internal Revenue Service in an agreement embodied in a Form 870 AD, signed for the Service on December 28, 1995. DPFF ¶ 6. A recomputation of tax and interest purportedly implementing the Form 870 AD was performed by IRS Appeals in 1996, resulting in the allowance of credits on June 3, 1996, in the amounts of $5,052,403.00 in tax, $4,414,336.00 in abated deficiency interest previously charged, plus $10,079,031.45 in statutory interest. DPFF ¶ 7. A copy of this computation is attached as Exhibit A to the Stipulation filed July 1, 2005, and is referred to hereafter as the "Audit Interest Calculations." DPFF ¶ 7. *See* Plaintiff's Proposed Findings of Fact (hereafter "PPFF") ¶ 4. On June 12, 1997, the taxpayer filed an administrative claim for allowance of $4,401,991 in additional statutory interest, asserting an error in the 1996 computation. DPFF ¶ 8. When the matter could not be resolved with the Service, taxpayer filed this suit on May 17, 2002.

## SUMMARY OF ARGUMENT

In this case, taxpayer asserts that the last interest computation by the Internal Revenue Service, the "Audit Interest Calculations," performed in 1996, included an error. The

---

[1/] General adjustments are those that relate to the return as originally filed rather than to carryback items.

[2/] Defendant's Proposed Findings of Uncontroverted Fact, filed herewith.

Government agrees that those computations were in error. The Government agrees further that plaintiff's recomputation of interest (summarized in Exhibit L to the Silverman Affidavit[3/]) corrects an error found in the Audit Interest Computations. The Government agrees further that correction of that error has the consequence of showing an overpayment interest balance in plaintiff's 1976 account in the amount of $4,402,837 as of December 2, 1987. Plaintiff contends that this is the amount, plus overpayment interest thereon, that plaintiff is entitled to recover in this case. Silverman Affidavit ¶ 20; Silverman Affidavit Ex. l.

The Government disputes this last contention, because we have identified two errors in plaintiff's computations. Correction of the first error reduces plaintiff's potential recovery from more than $4 million, to about $1.2 million. Correction of the second error produces an underpayment balance of $10.7 million, owed by taxpayer to the Government. Unfortunately, the statutes of limitation on assessment and on recovery of erroneous refunds prevent collection of this deficiency. As a consequence of plaintiff's errors, it's computations grossly overstate the amount of interest to which plaintiff is entitled. In fact, plaintiff is entitled to nothing.

Plaintiff's first error involves the netting of a non-interest-bearing balance against an interest-bearing balance. As a consequence of many prior payments, credits, refunds, carrybacks and the like, taxpayer's 1976 tax account showed an overpayment between January 1, 1978 and January 1, 1981. DPFF ¶ 9. Thereafter, the account showed an underpayment of tax principal. *Id.* Taxpayer is entitled to overpayment interest on the "interim" overpayment. But at the end of the overpayment period, taxpayer's computation takes this balance of accrued overpayment interest, and combines it with the underpayment of tax principal that arises at the end of the

---

[3/] "Affidavit of Francine Silverman in Support of Plaintiff's Motion for Summary Judgment," filed by plaintiff on August 4, 2005.

interim overpayment period. *Id.* Subsequent interest on the underpayment is thus reduced or eliminated. Because during the years involved the tax underpayment was subject to interest, while the accrued overpayment interest was itself *not* subject to interest, such netting is impermissible. The result of the correction of this error in plaintiff's computation is to substantially reduce the amount of interest that plaintiff might be entitled to recover.

Plaintiff's second error, which originated in the Internal Revenue Service computation and which plaintiff preserves, involves the use of erroneous "availability dates" for the various tax credits applied from later years to reduce taxpayer's liability for the year in issue, 1976. Taxpayer's computation, and the Audit Interest Computations, assign effective dates to a substantial portion of these credits that are earlier than is actually the case. DPFF ¶ 14. That is, the computations assume that credits are available (and, therefore, any overpayment will begin to accrue overpayment interest) at the end of 1977 when, in fact, most of them are not available until the end of 1979. DPFF ¶¶ 17, 21. By using an erroneously early date on which these substantial credits are available to reduce plaintiff's 1976 tax liability results in overpayment interest beginning to accrue at an erroneously early date. The effect of the use of the erroneously early dates, of course, is to overstate the amount of overpayment interest actually due to plaintiff. The result of the correction of this error in plaintiff's computation is to entirely eliminate any recovery by plaintiff. In fact, correction of this "availability date" error eliminates any recovery by plaintiff even if plaintiff's interest netting error is not corrected. DPFF ¶ 4.

Finally, there exists yet another very significant error which the Government does not seek to correct. Briefly, the amount and the nature of the very substantial credits applied to reduce plaintiff's tax liability for 1976 is wrong. The final adjustment by the Internal Revenue

Service, leading to the execution of an 870 AD, very substantially overstated the amount of the credits that could properly be applied to plaintiff's 1976 tax liability. In short, the tax liability to which the Service agreed in 1996 is substantially understated – plaintiff owes the Government a substantial tax deficiency. Because the year was closed by execution of a Form 870 AD, however, pursuant to which taxpayer and the Government agreed on the taxpayer's final tax liability, the Government does not raise this issue.

## ARGUMENT

### I. INTRODUCTION

In general, interest is payable on an *underpayment* of tax beginning on the date the tax is due but unpaid, and ending on the date the underpayment is satisfied. Internal Revenue Code of 1954,[4/] § 6601(a); *Avon Products, Inc. v. United States*, 588 F.2d 342 (2d Cir. 1978). In general, interest on an *overpayment* of tax is payable from the date on which the overpayment arises, until a date not more than 30 days prior to the date of the refund check (if the overpayment is refunded) or, if the overpayment is credited against another tax owed by the taxpayer, then through the due date of the return for the tax against which it is credited. § 6611(a) - (b); *Marsh & McLennan Companies, Inc. v. United States*, 302 F.3d 1369 (Fed. Cir. 2002). None of the issues presented by the instant case depend for their resolution upon application of these general rules. Instead, the puzzles involved in this case require understanding and application of the obsolete rule of simple interest, as well as the restricted interest precepts applied when a taxpayer's tax liability is reduced by credits or losses arising in years other than the year in issue.

[4/] All statutory references are to the provisions of the Internal Revenue Code, as in effect during the periods relevant to this suit.

A. No Interest on Interest.

Today, as during the periods in issue, the Code provision that imposes interest on overpayments[5/] includes no language by which overpayment interest might be applied to accrued overpayment interest. That is, Section 6611, by itself, does not (and did not) call for compound interest, but imposed only simple interest. Section 6601, which imposes *under*payment interest, on the other hand, has long included subsection (e)(1), which provides that, for many purposes, underpayment interest is to be treated like tax. Lest this lead the unwary to the erroneous conclusion that Congress intended thereby to impose compound interest, § 6601(e)(2) provided, during the periods in issue, as follows:

> **(2) No interest on interest.**–No interest under this section shall be imposed on the interest provided by this section.

Thus, until 1983, underpayment interest, as well as overpayment interest, was simple interest.

Congress changed this in 1982. The Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), P.L. 97-248, 96 Stat. 324, 635, repealed former § 6601(e)(2) (in § 344(b)(1) of the Act), and, in § 344(a) of the Act, added present Code Section 6622:

> **SEC. 6622. INTEREST COMPOUNDED DAILY**
>
> (a) GENERAL RULE.–In computing the amount of any interest required to be paid under this title . . . by the Secretary [*i.e.*, overpayment interest] or by the taxpayer [*i.e.*, underpayment interest], or any other amount determined by reference to such amount of interest, such interest and such amount shall be compounded daily.

The modifications made by TEFRA which commence the imposition of compound interest "shall

[5/] An overpayment is "any payment in excess of that which is properly due." *Jones v. Liberty Glass Co.*, 332 U.S. 524, 531 (1947).

apply to interest accruing after December 31, 1982."[6/] Thus, prior to January 1, 1983, interest is simple – no interest is paid on interest – while after December 31, 1982, interest is compounded daily. Moreover, to the extent that on January 1, 1983, there were accrued balances of interest outstanding, those balances themselves also commence bearing compound interest on that date. *Gannet v. United States*, 877 F.2d 965 (Fed.Cir.1989).

B. Restricted Interest.[7/]

One might imagine that the task of determining a taxpayer's liability for a given year would be sufficiently difficult and complex to the extent it depended only on events and transactions with respect to that year. But the Internal Revenue Code is riddled with provisions involving "carrybacks" and "carryovers" that permit the reduction of tax for one year as the consequence of transactions and events that occurred in later or in earlier tax years. As relevant to the instant case, § 172 permits the deduction of "net operating loss" carrybacks from later years. Thus, a net operating loss for one year may be used to reduce taxable income for a prior year.[8/] In addition, various tax credits[9/] which cannot be used in the year which generates them, may be carried back and applied against the tax liability of a prior year. These include the

[6/] § 346(d)(2), Tax Equity and Fiscal Responsibility Act (TEFRA), Pub.L. No. 97-248, 96 Stat. 324, 638 (1982).

[7/] For a general discussion of what is meant by "restricted interest," *see* 15 Mertens Law of Federal Income Taxation § 58A:43 (2003).

[8/] A "net operating loss" is defined as an excess of business deductions (with certain modifications) over gross income for a particular tax year.

[9/] Credits are amounts which reduce tax liability on a dollar-for-dollar basis, while deductions reduce income that is subject to tax at the applicable rate.

investment tax credit[10/] and the credit for foreign tax paid,[11/] and others.

As matter of fact, in the instant case, while the year in issue is 1976, the taxpayer's tax liability for that year was reduced as the consequence of carrying back to that year credits from 1977, 1979, 1980 and 1981. DPFF ¶ 5. Overpayments caused by such carrybacks bear interest that starts only at the end of the taxable year that generates the tax credit. And, if that tax credit became available to be carried back to the year in issue only because a net operating loss was carried back to the year that generated the credits, then overpayment interest starts only at the end of the taxable year of the net operating loss.[12/]

In general, for the pre-TEFRA tax years at issue, if any overpayment of tax results from a carryback of a credit or a net operating loss, such overpayment shall be deemed not to have been made prior to the close of the taxable year in which such credit or net operating loss arises. See former I.R.C. §6611(f)(1). Thus, for example, an overpayment of tax resulting from the carryback of a credit arising in 1977 would not begin to accrue overpayment interest until January 1, 1978. Similarly, an overpayment of tax resulting from the carryback of a net operating loss arising in 1980 would not begin to accrue overpayment interest until January 1, 1981.

However, where an overpayment of tax results from carryback of a credit from one taxable year, and the credit carryback is attributable to a net operating loss carryback from a subsequent taxable year, overpayment interest on the credit carryback does not begin to accrue

---

[10/] Allowed by section 38, computed and carried back or forward by sections 46 through 48 of the Code as in effect during the years in suit, currently governed by sections 38 through 45.

[11/] Allowed by section 33, carried back by section 904(c) – (e) of the Code as in effect during the years in suit, currently governed by sections 27 and 904(c).

[12/] In section C, infra, we have provided an example illustrating application of these principles.

until the first day after the close of the subsequent tax year in which such net operating loss arises. Former §6611(f)(2). Effective for carrybacks arising in tax years beginning November 10, 1978 and earlier (which would include the tax credits arising in the 1977 taxable year), I.R.C. §6611(f)(2) provides:

> (2) Investment Credit Carryback.-- For purposes of subsection (a) , if any overpayment of tax imposed by subtitle A results from an investment credit carryback, such overpayment shall be deemed not to have been made before the close of the taxable year in which such investment credit carryback arises, or, with respect to any portion of an investment credit carryback from a taxable year attributable to a net operating loss carryback, or a capital loss carryback from a subsequent taxable year, such overpayment shall be deemed not to have been made before the close of such subsequent taxable year.[13/]

Overpayments resulting from the carryback of foreign tax credits are treated similarly. In the case of a foreign tax credit carryback, former §6611(g) provided:

> (g) Refund of income tax caused by carryback of foreign taxes – For purposes of subsection (a), if any overpayment of tax results from a carryback of tax paid or accrued to foreign countries or possessions of the United States, such overpayment shall be deemed not to have been paid or accrued prior to the close of the taxable year under this subtitle in which such taxes were in fact paid or accrued.

Although former §6611(g) did not specifically address foreign tax credit carrybacks which are attributable to NOL carrybacks from subsequent years, published guidance clarifies the interplay between former §6611(g) and §6611(f)(1). Rev. Rul. 71-534 holds that where a carryback of foreign taxes paid arises from a net operating loss carryback from a subsequent taxable year, interest on a resulting overpayment in the year to which the foreign taxes are carried back is computed from the first day after the close of the taxable year in which the net operating loss arises. Rev. Rul. 71-534, 1971-2 C.B. 414. See also GCM 34564 (§6611(f)(2) explicit NOL

---

[13/] Former I.R.C. §§6611(f)(4) and (f)(5) contained identical provisions applicable to WIN credits and Jobs credits.

provision does not preclude determination that similar rule applies for purposes of §6611(g)).[14/]

C. Illustration.

Application of these principles may be briefly illustrated. Imagine a simple case in which a taxpayer timely files his return for Year 1, reporting and paying tax in the amount of $100,000. In Year 2 the taxpayer has investment tax credits which cannot be used in that year, and which he carries back to Year 1, resulting in a reduction of tax in the amount of $50,000. In Year 3, the taxpayer has unused foreign tax credits which, when carried back to Year 1, reduces his tax liability by yet another $50,000. This taxpayer owes no tax at all for Year 1, and thus is due a refund of his entire $100,000 paid as tax. But when overpayment interest is computed on this refund, the interest limiting-provisions come into play, and limit the amount. Here, taxpayer will not be paid interest from the date he paid the $100,000 to the Government. Instead, he will receive interest on $50,000 from the end of Year 2, and interest on the entire $100,000 only from the end of Year 3, since it is only as of those dates that the carrybacks – used to reduce his tax liability for Year 1 – are "available" to do so. Thus, these dates are referred to as "availability dates."

Imagine now the same facts, except that taxpayer's return, as filed for Year 3, reported sufficient taxable income, and resulting income tax, that all of his foreign tax credits for Year 3 were used to reduce his income tax for Year 3. None remain to be carried back to Year 1. Taxpayer's return for Year 4, however, reports a large net operating loss, which he carries back to Year 3, where it wholly eliminates his taxable income for Year 3. Without taxable income for

---

[14/] Effective for foreign tax credit carrybacks arising in tax years beginning after August 5, 1997, §6611(g) was amended to specifically address foreign tax credit carrybacks attributable to NOL carrybacks from subsequent years, consistent with the language in former §6611(f)(2).

Year 3, taxpayer's foreign tax credits, previously used up in that year, now become available to be carried back, and taxpayer now carries them back to Year 1, reducing his tax in that year by $50,000. Interest on this $50,000 overpayment will not begin when that amount was paid with respect to Year 1. Neither will it commence at the end of Year 3, despite the fact that his tax for Year 1 is reduced by foreign tax credits generated in Year 3. Instead, because those credits are made available to carry back to Year 1 only upon the application to Year 3 of the net operating loss incurred in Year 4, interest on the overpayment for Year 1 will not begin until the end of Year 4.

## II. ERRORS IN PLAINTIFF'S COMPUTATION

### A. Prior to TEFRA Interest Compounding, Accrued Overpayment Interest May Not Be Applied to Reduce a Deficiency in Tax.

A Form 2285 ("Concurrent Determinations of Deficiencies and Overassessments in Cases Involving Restricted Interest Provisions of the Internal Revenue Code") was prepared to reflect the 1995 Form 870 AD settlement. DPFF ¶ 9. That Form 2285 (a copy of which is attached as Exhibit B to the Affidavit of Francine Silverman, submitted with taxpayer's brief) showed that taxpayer had an underpayment of tax of $5,226,072 due to general adjustments to the original 1976 return (effective on the due date of the return). Id. It then showed a $56,052,416 reduction in tax liability effective January 1, 1978, due to credit carrybacks from 1977.[15] *Id.* It then showed increases in liability of $42,813,374 effective January 1, 1980, and $13,826,494 effective January 1, 1981. *Id.* This yields a net tax underpayment balance of $5,813,524 as of January 1, 1981. *Id.* However, due to the interim tax reduction of $56,052,416, there existed an

[15] This entry was erroneous, as will be explained in Issue III below, because most of the carryback was actually only available as of January 1, 1980. The consequence of changing that effective date is entirely fatal to plaintiff's claim.

overpayment in the taxpayer's 1976 account between January 1, 1978 and January 1, 1981. *Id.* Based upon the above-referenced Form 2285, the taxpayer was due overpayment interest of $7,045,419[16] as of January 1, 1981. *Id.* The taxpayer's computation offset this interest against the $5,813,524 tax underpayment, thereby eliminating the tax due, and cutting off the accrual of deficiency interest on this underpayment. *Id.*

The $5,813,524 tax underpayment should remain outstanding and accrue deficiency interest until it is satisfied by payment or credit, or until January 1, 1983, the date on which compound interest begins. The $7,045,419 balance of overpayment interest accrued through January 1, 1981, should not accrue any further overpayment interest prior to January 1, 1983, since, prior to that date, the Internal Revenue Code specifically commanded that no interest was allowable on interest. Former § 6601(e)(2). Thus, this balance of $7,045,419 owed to the taxpayer, as it consists entirely of overpayment interest, can not itself bear interest prior to January 1, 1983. Similarly, prior to January 1, 1983, the underpayment interest accruing on the outstanding deficiency in tax of $5,813,524 itself accrues no interest.

As of January 1, 1983, and the advent of compound interest (*i.e.,* interest on interest), all of these separate items may be combined: the tax deficiency, the accrued overpayment interest, and the underpayment interest that has accrued on the tax deficiency. From that date forward, as all of these items bear interest (and at the same rate) they may be netted and the net balance thereafter bear overpayment or underpayment interest, as the case may be.

---

[16] This is the amount shown in plaintiff's computations, which we accept as correct for purposes of discussion. However, the Government reserves the right to challenge this figure should the occasion arise in future proceedings.

Taxpayer's computations, however, do not treat these balances consistent with the "no interest on interest" principle that was the law prior to January 1, 1983. Instead, taxpayer takes the overpayment interest balance ($7,045,419) outstanding on January 1, 1981 (when the interim overpayment ends, and the account moves to a deficiency balance) and offsets it against the tax underpayment balance ($5,813,524) as of January 1, 1981. DPFF ¶ 9. As the overpayment interest sum exceeds the underpayment tax amount, the net result is an amount owed by the Government to the taxpayer, with the consequence that no deficiency interest accrues on the unpaid deficiency in tax between January 1, 1981, and January 1, 1983. DPFF ¶ 9.

The taxpayer's argument during administrative consideration of this case was based on the so-called "use of the money" principle discussed in cases like *Avon Products, Inc. v. United States,* 588 F.2d 342 (2nd Cir. 1978); *May Department Stores Co. v. United States*, 36 Fed. Cl. 680 (1996); and *Sequa Corp. v. United States*, 1999-1 U.S.T.C. ¶ 50,379 (S.D.N.Y. 1998). While *Avon Products* established the "due and unpaid" standard governing when underpayment interest may be imposed, "use of money" language creates far more confusion in *May* and *Sequa*. Those cases involve a fact pattern in which a corporate taxpayer had overpaid its estimated tax for Year 1 and elected to credit the overpayment to the estimated tax of Year 2. Subsequently, the Service determined a deficiency in tax for Year 1, meaning that some or all of the estimated tax credit from Year 1 to Year 2 retroactively became unavailable. The courts hold that the Service cannot charge deficiency interest on this portion of the credit elect amount from the original due date of the return for Year 1, but must defer the starting date for deficiency interest until the due date of the estimated tax installment for Year 2 against which the taxpayer used the credit. One ground for this holding is that the Government held the credit amount (representing

payments in excess of the liability taxpayer reported on its Year 1 return) and had the use of this money until the date as of which the taxpayer needed the credit to pay the Year 2 estimated tax. Therefore, the subsequently determined tax deficiency for Year 1 was not both due and unpaid for this period, and the Government was not entitled to charge the taxpayer deficiency interest.

This treatment is often carelessly assumed to be based upon some overriding principle that the Government cannot charge interest on an amount taxpayer owes, so long as the Government holds funds owed to the Government. See, in this regard, taxpayer's arguments advanced in *FleetBoston Financial v. United States*, 68 Fed. Cl. 177 (2005). Instead, a more coherent and sensible view of *May* is that it deals only with the mechanics of the transfer of the taxpayer's funds from one account to another. That is, the taxpayer's credit elect is treated as remaining in the overpayment year[17/] (thus preventing, to that extent, the imposition of deficiency interest), unless and until it is needed as a payment of estimated tax for the next year. That is certainly the language used by the Service in adopting the *May* rule in Rev. Rul. 99-40, 1999-2 Cum. Bull. 441.

Of critical importance in this respect is the fact that in the event the credit elect is never actually needed to pay an estimated tax payment for the following taxable year, it nevertheless moves out of the generating "overpayment year," and into the next tax period, as of the due date of the return for that next taxable year. That is, if the reported tax overpayment for Year 1 is never needed at all to satisfy an estimated tax payment for Year 2, it nevertheless is gone from

---

[17/] That is, the year for which the taxpayer (erroneously, as it turns out) reported an overpayment which he elected to apply as an estimated tax payment to the following taxable year.

Year 1, at the latest, when the taxpayer's taxes for Year 2 are due to be paid.[18/] At that time, deficiency interest begins to accrue on the deficiency for Year 1, even if the credit elect, after it arrives in Year 2, does no more than increase what is already an overpayment in that year, and thus continues to constitute money owed by the Government to the taxpayer. Thus, despite the fact that the Government has the use of the taxpayer's money, that fact does not prevent imposition of deficiency interest. *FleetBoston, supra.*

Prior to 1983, interest accrued on the principal amount of a tax deficiency, but not on a balance of overpayment interest that existed at a particular point in time. Thus, in order to implement the Congressional intent as to what liabilities should and should not bear interest, interest-bearing and non-interest bearing items should be kept separate and discrete in computations covering periods prior to January 1, 1983. Any "use of money" analysis proceeds from the premise that if I have your money, then I owe you interest, while if you have my money, I owe you interest. But prior to January 1, 1983, that was simply not the law. It was entirely possible for the taxpayer to owe the Government money, yet have no obligation to pay interest on that debt, to the extent the debt consisted of (underpayment) interest. Similarly, it was possible for the Government to owe the taxpayer money, yet have no obligation to pay interest on that debt, to the extent the debt consisted of (overpayment) interest.

This separate treatment is prescribed in Rev. Proc. 60-17, Sec. 3, 1960-2 Cum. Bull. 937 at 947 (emphasis added) which, of course, applies to pre-interest-compounding periods and states, in part:

---

[18/] This is the date on which the return is due for the taxable year. Thus, for a corporate taxpayer filing a calendar year return, the credit elect leaves Year 1, at the latest, on March 15 of Year 3, when that taxpayer's return for Year 2 is due to be filed.

> .01 *General*.- (1) * * * However, it more often happens that an audit determination involves income adjustments under more than one section of law, resulting in a deficiency or overassessment attributable to each. This is referred to as a combination of adjustments. These deficiencies and overassesements are offset against each other resulting in (a) no change, (b) a net deficiency to be assessed, or (c) a net overassessment to be allowed. ***Interest is computed separately on each of the deficiencies or overassessments resulting from these adjustments*** and will be restricted on some adjustments but not on others.
>
> (2) *Interest on unscheduled overpayments.* - a. In some instances when a net deficiency is to be assessed for a given taxable period, the interest computed on overpayments for the same taxable period which are not to be scheduled is less than interest computed on the deficiencies. In these instances the interest due the taxpayer is deducted from interest due the government and the deficiency is assessed together with the *net* amount of interest.
>
> b. On the other hand, if interest on overpayments which are not to be scheduled is greater than interest computed on deficiencies, the entire amount of deficiency interest is assessed, and the allowable interest is formally scheduled for credit to the deficiency and interest assessed.

This indicates that interest on deficiencies and on unscheduled overpayments is to be computed separately in the case of multiple adjustments to a single taxable year which give rise alternately to deficiencies and overassessments. Under paragraph b., the Service is to compute separately deficiency interest and overpayment interest and then offset the two only when the deficiency interest is assessed and the overpayment interest is formally scheduled. Moreover, item g. (a) in the Table following Sec. 3.02 of the Revenue Procedure shows that if the "unpaid amount[] satisfied by credit of interest allowable on an overpayment" is a tax liability, then interest on such tax liability is to run from the due date of the tax to the 30th day after waiver or the date assessed, if earlier.

In upholding application of another portion of Rev. Proc. 60-17 (dealing with the date an overpayment was effective as a credit) as against the Government's contention that a contrary result was dictated by use-of-the-money principles, the court in *United States v. St. Joe Minerals*

*Corp.*, 2001-2 U.S.T.C. ¶ 50,722 (E.D. Mo. 2002) stated, "...[P]laintiff [*i.e.*, the United States] fails to notice that Rev. Proc. 60-17 specifically considered the use of money principles when it was drafted, and this Court has already decided that Rev. Proc. 60-17 applies in this case. See Rev. Proc. 60-17, section 2.01(1) (Under the general rule, interest is paid on a tax overpayment for the time the government has the use of the taxpayer's money. Interest is collected similarly, for the time the taxpayer has the use of the government's money.)" 2001-2 U.S.T.C. at 90,001.

By providing for separate accrual of interest on overpayments and underpayments up to the date of assessment, the Revenue Procedure allows the taxpayer the full interest benefit of the use of its money *allowable under the Code*. If the taxpayer does not receive interest on an accrued balance of overpayment interest under these procedures, it is because Congress did not allow interest on interest prior to 1983, not because the Government was violating use-of-the-money principles.

Congress' addition of Section 6601(f) to the Code also provides support to this analysis. Prior to 1958, there were disparate periods for the running of interest on underpayments and overpayments, as described by the House Committee report on the Technical Amendments Act of 1958 (Pub. L. 88-866)(emphasis added):

> Section 6611(b)(1) of the code [prior to amendment] provides, for example, that interest on an overpayment that is credited against an additional assessment is to be allowed from the date of the overpayment to the date of the assessment. However, interest on an additional assessment which is offset against an overpayment runs from the due date of the return until the credit is scheduled, which may be long after the date the interest on the overpayment is cut off by the assessment of the additional amount. In such cases, although the underpayment and overpayment offset each other, the Internal Revenue Service collects more interest than it pays. On the other hand, where a waiver of restrictions on assessments is filed, interest on an overpayment may run during the period between the 30th day after the waiver and issuance of notice and demand while interest on an offsetting deficiency may be suspended. In such a case it is the

> taxpayer who is entitled to more interest than he owes even though the overpayment and underpayment offset each other.

H.R. Rept. No. 8381, 85th Cong., 2nd Sess. (1957), 1958-3 Cum. Bull. 811 at 855. To remedy these disparities, Congress amended Section 6611(b)(1) and enacted what is now Section 6601(f), which provides:

> (f) SATISFACTION BY CREDITS. - If any portion of a tax is satisfied by credit of an overpayment, then no interest shall be imposed under this section on the portion of the tax so satisfied for any period during which, if the credit had not been made, interest would have been allowable with respect to such overpayment . . . .

Thus, in the case of overpayments applied as credits, it is instructive that the Congressional remedy was to cut off interest on the underpayment only for the period during which the overpayment would have accrued overpayment interest if it had been refunded rather than credited. In other words, Congress intended that deficiency interest be stopped only during periods of mutual indebtedness *where both the overpayment and underpayment were interest-bearing.* In the instant case, the accrued balance of overpayment interest would not have accrued overpayment interest between January 1, 1981, and January 1, 1983, if it had been refunded. However, the principal balance of the tax underpayment on January 1, 1981, would continue to accrue underpayment interest during that period. Thus, the two debts – the non-interest-bearing balance of overpayment interest and the interest-bearing tax deficiency – should not be treated as mutual indebtedness that "offset each other" for purposes of computing interest under the Code.

To adopt the taxpayer's position, by netting the accrued overpayment interest balance against the deficiency in tax on January 1, 1981, would be effectively to permit the payment of interest on interest, unavailable prior to January 1, 1983, the effective date of Section 6622 of the

Code.[19/] The taxpayer's position would not actually allow it to accrue overpayment interest on the balance of overpayment interest existing on January 1, 1981, but would use part of that balance (which does not itself bear overpayment interest) to cut off the accrual of deficiency interest that would otherwise have accumulated on the tax deficiency existing on that date. The latter is effectively equivalent to the former, inasmuch as it provides an interest benefit to the plaintiff based upon the existence of an overpayment interest balance in the account as of January 1, 1981. In *Industrial Development Corp. v. United States*, 138 F. Supp. 63 (N.D. Ill. 1955), the court used similar reasoning in holding that the Service could not offset accrued but unassessed deficiency interest (at the time when deficiency interest was not due until assessed) against a deposit made by the taxpayer. "An opposite result would be reached only if an overpayment could be set off, when made, against interest, accrued but not assessed, upon an outstanding tax liability. Such a scheme would have the effect of allowing interest upon interest." 138 F. Supp at 65.

In summary, as of January 1, 1981, the taxpayer's computation shows a credit balance of overpayment interest of $7,045,419. On that date, due to the recapture of a previously allowed carryback, a tax deficiency of $5,813,524 arose. The taxpayer's computation erroneously offset these two amounts as of January 1, 1981, even though the $7,045,419 would not have borne interest after January 1, 1981, while the $5,813,514 tax deficiency would have borne interest after that date. Based on the foregoing discussion, the $7,045,419 should have been held in

---

[19/] See also Section 6601(e)(2) prior to amendment by Section 344 of the Tax Equity and Fiscal Responsibility Act (P.L. 97-248)("No interest on interest. - No interest under this section shall be imposed on the interest provided by this section.")

suspense without interest until January 1, 1983, and then offset against the $5,813,524 plus interest that accrued on the $5,813,523 between January 1, 1981, and January 1, 1983.

B. The Final Appeals Interest Computation – and Plaintiff's Interest Computation – Uses Erroneous Effective Dates for Carrybacks Applied to Reduce Plaintiff's Tax Liability for 1976.

We come finally to the computational error the correction of which results in plaintiff being entitled to no recovery whatever, even after giving effect to the Government's concession of the issue set out in plaintiff's brief, and irrespective of how (or if) the Court resolves plaintiff's interest netting error. The overarching issue in this case is that the Form 2285 underlying the Audit Interest Computations, on which plaintiff relies for its recomputation, is incorrect in showing that a $56,052,416 carryback from 1977 originated in 1977, and, hence, was effective to reduce the 1976 tax liability as of January 1, 1978.[20/] DPFF ¶ 14. In fact, aside from about $9.2 million in excess foreign tax credits, all other credits reported by plaintiff with respect to its 1977 year were originally entirely used against 1977 tax, and there was thus no more to carry back to 1976. DPFF ¶ 17. It was only in 1979 that there were excess credits available for carryback due to the limitation based on the pre-credit tax liability in that year. DPFF ¶ 17. Thus, the credits first became available at the end of the 1979 year, with an availability date January 1, 1980, rather than at the end of 1977, with an availability date of January 1, 1978. DPFF ¶ 18. Subsequently, there was net operating loss carryback from 1980 to 1977, which reduced 1977 taxable income and reduced the 1977 investment tax credit limitation, freeing up credits to be carried back from 1977 to 1976. DPFF ¶ 19. As noted above, in our discussion regarding the availability dates of carrybacks, when carrybacks become available only as a consequence of a

[20/] See discussion, *supra*, regarding the availability dates of credit carrybacks.

net operating loss, they have an availability date derived from the year of the net operating loss. Thus, those credit carrybacks (principally investment tax credits), freed by a net operating loss from 1980, bear an availability date of January 1, 1981. Since the 1979 credits had already gone back to 1976, the 1980 net operating loss did not change the effective date of those credits (*i.e.* 1/1/80), but merely meant that they were deemed to have come from 1977 instead of 1979.DPFF ¶ 20.

Thus, most of the carryback tax reduction to plaintiff's 1976 liability was actually effective only as of January 1, 1980, rather than January 1, 1978, as in plaintiff's computation. DPFF ¶ 21. Pushing the carryback availability date forward by two years reduces allowable interest to the extent that the taxpayer will not be entitled to recover anything in this case. Thus, all of the issues discussed above would be rendered moot if the Government prevails with respect to this "effective date" issue.

As set out in our proposed findings of fact, a recomputation of interest with respect to 1976 correcting the error set out in plaintiff's brief, but then correcting both the "interest netting" error discussed above, as well as correcting the availability dates for the credit carrybacks to 1976, results in a deficiency balance in plaintiff's account as of December 2, 1987, composed of $2,231,986 in deficiency interest, plus $8,453,930 in excess overpayment interest previously paid (in error) to plaintiff, for a total deficiency at that date of $10,685,916. DPFF ¶ 4. While plaintiff owes this amount to the United States, plus deficiency interest thereon for the intervening 20 years, assessment or collection is barred by the applicable statutes of limitation. But plaintiff is entitled to recover nothing in the instant suit.

## CONCLUSION

At the end of the day, even if plaintiff is correct (as the Government has agreed) with respect to the issue raised in plaintiff's brief, and even if plaintiff were correct (which plaintiff is not) with respect to the "accrued interest netting" issue, recomputation of interest with respect to 1976 correcting only the availability dates for the carrybacks applied to that year shows that plaintiff is entitled to recover nothing. Accordingly, plaintiff's motion for summary judgment should be denied, the Government's cross-motion for summary judgment should be granted, and the complaint dismissed, with prejudice, with all allowable costs assessed against plaintiff.

Respectfully submitted.

s/ W. C. Rapp
W.C. RAPP
Attorney of Record
*United States Department of Justice*
*Tax Division*
*Court of Federal Claims Section*
*Post Office Box 26*
*Ben Franklin Post Office*
*Washington, DC 20044*
*Voice: (202) 307-0503*
*Fax: (202) 514-9440*
*Email: william.c.rapp2@usdoj.gov*

EILEEN J. O'CONNOR
*Assistant Attorney General*
DAVID GUSTAFSON
*Acting Chief, Court of Federal Claims Section*
ROBERT C. MARKHAM
*Senior Attorney, Office of Review*
STEVEN I. FRAHM
*Assistant Chief, Court of Federal Claims Section*

March 6, 2006

s/ Steven I. Frahm
Of Counsel

# APPENDIX

## INTERNAL REVENUE CODE OF 1954 AS AMENDED:

## SEC. 6601. INTEREST ON UNDERPAYMENT, NONPAYMENT, OR EXTENSIONS OF TIME FOR PAYMENT, OF TAX.

(a) GENERAL RULE. –If any amount of tax imposed by this title (whether required to be shown on a return, or to be paid by stamp or by some other method) is not paid on or before the last date prescribed for payment, interest on such amount at the annual rate established under section 6621 shall be paid for the period from such last date to the date paid.[21/]

* * * * *

(d) INCOME TAX REDUCED BY CARRYBACK OR ADJUSTMENT FOR CERTAIN UNUSED DEDUCTIONS. –

(1) NET OPERATING LOSS CARRYBACK OR CAPITAL LOSS CARRYBACK. –If the amount of any tax imposed by subtitle A is reduced by reason of a carryback of a net operating loss or net capital loss, such reduction in tax shall not affect the computation of interest under this section for the period ending with the last day of the taxable year in which the net operating loss or net capital loss arises.[22/]

(2) INVESTMENT CREDIT CARRYBACK. –If the credit allowed by section 38 for any taxable year is increased by reason of an investment credit carryback, such increase shall not affect the computation of interest under this section for the period ending with the last day of the taxable year in which the investment credit carryback arises, or with respect to any portion of an investment credit carryback from a taxable year attributable to a net operating loss carryback or a capital loss carryback from a subsequent taxable year, such increase shall not affect the computation of interest under this section for the period ending with the last day of such subsequent taxable year."

P.L. 95-628, § 8(c)(2)(A) amended Code Sec. 6601(d)(2) to read as follows, effective with respect to carrybacks arising in tax years beginning after November 10, 1978:

(2) CERTAIN CREDIT CARRYBACKS. –

(A) IN GENERAL. –IF any credit allowed for any taxable year is increased by reason of a credit carryback, such increase shall not affect the computation of interest under this section for the period ending with the last day of the taxable

---

[21/] P.L. 99-514, § 1511(c)(11) amended Code Sec. 6601(a) by replacing "an annual rate established under section 6621" with "the underpayment rate established under section 6621" effective for determining interest for the periods after December 31, 1986.

[22/] P.L. 97-248, § 346(c)(2)(A) amended Code Sec. 6601(d)(1) by replacing "the last day of the taxable year" with "the filing date for the taxable year."

year in which the credit carryback arises, or, with respect to any portion of a credit carryback from a taxable year attributable to a net operating loss carryback, capital loss carryback, or other credit carryback from a subsequent taxable year such increase shall not affect the computation of interest under this section for the period ending with the last day of such subsequent taxable year.[23/]

(B) CREDIT CARRYBACK DEFINED. –For purposes of this paragraph, the term 'credit carryback' has the meaning given such term by section 6511(d)(4)(C).

P.L. 105-34, § 1055(a) amended Code Sec. 6601(d) by redesignating paragraphs (2) and (3) as paragraphs (3) and (4) respectively and adding a new paragraph (2), effective with respect to foreign tax credit carrybacks arising in tax years beginning after August 5, 1997, as follows:

(2) FOREIGN TAX CREDIT CARRYBACKS. –If any credit allowed for any taxable year is increased by reason of a carryback of tax paid or accrued to foreign countries or possessions of the United States, such increase shall not affect the computation of interest under this section for the period ending with the filing date for the taxable year in which such taxes were in fact paid or accrued, or, with respect to any portion of such credit carryback from a taxable year attributable to a net operating loss carryback or a capital loss carryback from a subsequent taxable year, such increase shall not affect the computation of interest under this section for the period ending with the filling date for such subsequent taxable year.

(e) APPLICABLE RULES. –Except as otherwise provided in this title–

(1) INTEREST TREATED AS TAX. –Interest prescribed under this section on any tax shall be paid upon notice and demand, and shall be assessed, collected, and paid in the same manner as taxes. Any reference in this title (except subchapter B of chapter 63, relating to deficiency procedures) to any tax imposed by this title shall be deemed also to refer to interest imposed by this section on such tax.

(2) NO INTEREST ON INTEREST. –No interest under this section shall be imposed on the interest provided by this section.[24/]

---

[23/] P.L. 97-248, § 346(c)(2)(B), amended Code Sec. 6601(d)(2)(A) by replacing "the last day of" with "the filing date for" in each occurrence that the phrase appeared. Section 346(c)(2)(C) amended Code Sec. 6601(d) by adding paragraph (4) as follows, effective with respect to interest accruing after October 3, 1982:

(4) FILING DATE. –For purposes of this subsection, the term 'filing date' has the meaning given to such term by section 6611(f)(3)(A).

[24/] P.L. 97-248, § 344(b)(1) amended Code Sec. 6601(e) by repealing paragraph (2) and redesignating subsequent paragraphs, effective with respect to interest accruing after December 31, 1982.

(f) SATISFACTION BY CREDITS. –If any portion of a tax is satisfied by credit of an overpayment, then no interest shall be imposed under this section on the portion of the tax so satisfied for any period during which, if the credit had not been made, interest would have been allowable with respect to such overpayment.[25/]

## SEC. 6611. INTEREST ON OVERPAYMENTS.

(a) RATE. –Interest shall be allowed and paid upon any overpayment in respect of any internal revenue tax at an annual rate established under section 6621.[26/]
(b) PERIOD. –Such interest shall be allowed and paid as follows:

(1) Credits. –In the case of a credit, from the date of the overpayment to the due date of the amount against which the credit is taken.

(2) Refunds. –In the case of a refund, from the date of the overpayment to a date (to be determined by the Secretary or his delegate) preceding the date of the refund check by not more than 30 days, whether or not such refund check is accepted by the taxpayer after tender of such check to the taxpayer. The acceptance of such check shall be without prejudice to any right of the taxpayer to claim any additional overpayment and interest thereon.[27/]

* * * * *

(f) REFUND OF INCOME TAX CAUSED BY CARRYBACK OR ADJUSTMENT FOR CERTAIN UNUSED DEDUCTIONS. –

(1) NET OPERATING LOSS CARRYBACK OR CAPITAL LOSS CARRYBACK. –For purposes of subsection (a), if any overpayment of tax imposed by subtitle A results from a carryback of a net operating loss or net capital loss, such overpayment shall be deemed not to have been made prior to the close of the taxable year in which such net operating loss or net capital loss arises.

(2) INVESTMENT CREDIT CARRYBACK. – For purposes of subsection (a), if any overpayment of tax imposed by subtitle A results from an investment credit carryback, such overpayment shall be deemed not to have been made prior to the close of the taxable year in which such investment credit carryback arises, or, with respect to any portion of an investment credit carryback from a taxable year attributable to a net operating loss

---

[25/] P.L. 105-206, § 3301(b) amended Code Sec. 6601(f) by adding at the end a new sentence, "The preceding sentence shall not apply to the extent that section 6621(d) applies." Generally effective with respect to interest for periods beginning after July 22, 1998.

[26/] P.L. 99-514, § 1511(c)(13) amended Code Sec. 6611(a) by replacing "an annual rate established under section 6621" with "the overpayment rate established under section 6621," effective with respect to determining interest for periods after December 31, 1986.

[27/] P.L. 94-455, § 1906(b)(13)(A) amended the 1954 Code by replacing "Secretary or his delegate" with "Secretary" each time the phrase was used, effective February 1, 1977.

carryback from a subsequent taxable year, such overpayment shall be deemed not to have been made prior to the close of such subsequent taxable year.

P.L. 95-628, § 8(c)(3)(A) amended Code Sec. 6611(f)(2) to read as follows, effective with respect to carrybacks arising in tax years beginning after November 10, 1978:

(2) CERTAIN CREDIT CARRYBACKS. –

(A) IN GENERAL. –For purposes of subsection (a), if any overpayment of tax imposed by subtitle A results from a credit carryback, such overpayment shall be deemed not to have been made before the close of the taxable year in which such credit carryback arises, or, with respect to any portion of a credit carryback from a taxable year attributable to a net operating loss carryback, capital loss carryback, or other credit carryback from a subsequent taxable year, such overpayment shall be deemed not to have been made before the close of such subsequent taxable year.

(B) CREDIT CARRYBACK DEFINED. –For purposes of this paragraph, the term 'credit carryback' has the meaning given such term by section 6511(d)(4)(C). [28]

P.L. 105-34, § 1055(b)(1) amended Code Sec. 6611(f) by adding a new paragraph (2) as follows and redesignating subsequent sections, effective with respect to foreign tax credit carrybacks arising in tax years beginning after August 5, 1997:

(2) FOREIGN TAX CREDIT CARRYBACKS. –For purposes of subsection (a), if any overpayment of tax imposed by subtitle A results from a carryback of tax paid or accrued to foreign countries or possessions of the United States, such overpayment shall be deemed not to have been made before the filing date for the taxable year in which such taxes were in fact paid or accrued, or, with respect to any portion of such credit carryback from a taxable year, such overpayment shall be deemed not to have been made before the filing date for such subsequent taxable year.

(g) REFUND OF INCOME TAX CAUSED BY CARRYBACK OF FOREIGN TAXES. –For purposes of subsection (a), if any overpayment of tax results from a carryback of tax paid or accrued to foreign countries or possessions of the United States, such overpayment shall be deemed not to have been paid or accrued prior to the close of the taxable year under this subtitle in which taxes were in fact paid or accrued. [29]

---

[28] P.L. 97-248, § 346(c)(1)(A) amended Code Sec. 6611(f)(1) by replacing "the close of the taxable year" with "the filing date for the taxable year." Section 346(c)(1)(B) amended Code Sec. 6611(f)(2)(A) by replacing "the close of" with "the filing date for" in each occurrence that the phrase appeared, effective with respect to interest accruing after October 3, 1982.

[29] P.L. 97-248, § 346(c)(1)(D) amended Code Sec. 6611(g) by replacing "the close of the taxable year" with "the filing date (as defined in subsection (f)(3)) for the taxable year" effective with respect to interest accruing after October 3, 1982. P.L. 105-34, § 1055(b)(2)(D) amended

## SEC. 6621. DETERMINATION OF RATE OF INTEREST.

(a) IN GENERAL. –The rate of interest under sections 6601(a), 6602, 6611(a), 6332(c)(1), and 7426(g) of this title, and under section 2411(a) of title 28 is 9 percent per annum, or such adjusted rate as is established by the Secretary or his delegate under subsection (b). [30/]

P.L. 96-167, § 4 amended Code Sec. 6621(a) to read as follows, effective December 29, 1979:

(a) IN GENERAL. –The annual rate established under this section shall be such adjusted rate as is established by the Secretary under subsection (b).

P.L. 99-514, § 1511 amended Code Sec. 6621 by striking subsection (a) and inserting in place thereof a new subsection (a) as follows, effective with respect to determining interest to periods after December 31, 1986:

(a) GENERAL RULE.–

(1) OVERPAYMENT RATE. –The overpayment rate established under this section shall be the sum of –

(A) the short-term Federal rate determined under subsection (b), plus

(B) 2 percentage points.

(2) UNDERPAYMENT RATE. –The underpayment rate established under this section shall be the sum of –

(A) the short-term Federal rate determined under subsection (b), plus

(B) 3 percentage points. [31/]

To the extent that an overpayment of tax by a corporation for any taxable period (as defined in subsection (c)(3), applied by substituting “overpayment” for “underpayment” exceeds $10,000, subparagraph (B) shall be applied by substituting ‘0.5 percentage point’ for ‘2 percentage points’. [32/]

---

Code Sec. 6611 by striking subsection (g) and redesignating subsequent subsections, effective after August 5, 1997.

[30/] P.L. 94-455, § 1906(b)(13)(A) amended 1954 Code by substituting “Secretary” for “Secretary or his delegate” each place it appeared, effective February 1, 1977.

[31/] P.L. 100-647, § 1015(d)(1)-(2) amended Code Sec. 6621 by replacing “short-term Federal rate” with “Federal short-term rate” each place it appears, effective as if included in the provision of P.L. 99-514 to which it relates.

[32/] Final sentence only added by P.L. 103-465, § 713(a), effective December 31, 1994. P.L. 105-34, § 1604(b)(1) amended Code Sec. 6621(a)(1) by replacing “subsection (c)(3))” in the last sentence with “subsection (c)(3), applied by substituting ‘overpayment’ for ‘underpayment’),” effective as if included in the section of P.L. 103-465 to which it relates. P.L.

(d) ELIMINATION OF INTEREST ON OVERLAPPING PERIODS OF TAX OVERPAYMENTS AND UNDERPAYMENTS. –To the extent that, for any period, interest is payable under subchapter A and allowable under subchapter B on equivalent underpayments and overpayments by the same taxpayer of tax imposed by this title, the net rate of interest under this section on such amounts shall be zero for such period.[33/]

## SEC. 6622. INTEREST COMPOUNDED DAILY.

(a) GENERAL RULE. –In computing the amount of any interest required to be paid under this title or sections 1961(c)(1) or 2411 of title 28, United States Code, by the Secretary or by the taxpayer, or any other amount determined by reference to such amount of interest, such interest and such amount shall be compounded daily.[34/]

---

105-206, § 3302(a) amended Code Sec. 6621(a)(1)(B) by replacing "2 percentage points" with "3 percentage points (2 percentage points in the case of a corporation)," for periods beginning after July 11, 1998.

[33/] P.L. 105-206, § 3301(a) amended Code Sec. 6621 to add the new subsection (d) above, generally effective with respect to interest for periods beginning after July 22, 1998.

[34/] Added, effective after December 31, 1982, by P.L. 97-248, § 344(a).